### NICHOLS and others *v.* BEARD, Collector.

*(Circuit Court, D. Massachusetts. May 21, 1881.)*

1. IMPORTS—WOOL WEB—REV. ST. § 2504, SCHED. M, p. 477.

    Certain imported merchandise, made of India rubber, wool, and cotton, and used for gores, or gussets, in the manufacture of congress boots, was invoiced as wool gusset, or wool terry, and entered as wool web. *Held,* that such merchandise was "webbing * * * composed wholly, or in part, of India rubber, not otherwise provided for," within the terms of section 2504 of the Revised Statutes, (Sched. M, p. 477, 2d Ed.,) and were therefore only subject to a duty of 35 per cent.—[ED.

*Charles Levi Woodbury* and *J. P. Tucker,* for plaintiffs.

*Geo. P. Sanger,* U. S. Att'y, for defendant.

LOWELL, C. J. The facts in this case are agreed. The plaintiffs imported into Boston certain merchandise invoiced as wool gusset, or wool terry, and entered as wool

web, upon which the collector assessed and exacted a customs duty of 50 cents a pound and 50 per cent. *ad valorem.* The plaintiffs insisted that the goods were only subject to a duty of 35 per cent., and duly protested against the exaction of a higher rate. The merchandise is webbing made of India rubber, wool, and cotton. It is known as "wool elastic webbing," as distinguished from "union elastic webbing," made of India rubber, silk, and cotton, and "cotton elastic webbing," made of India rubber and cotton. It is used for gores, or gussets, in the manufacture of congress boots, and without the India rubber would not be adapted for such use. Webbing is first mentioned in the tariff act of 1842, § 5, (cl. 10, 5 St. 555:) "On India-rubber oil cloth, webbing, shoes, braces or suspenders, or other fabrics or manufactured articles composed wholly or in part of India rubber, 30 per centum *ad valorem.*" This classification has continued ever since, and the duty has been increased but 5 per cent. The supreme court decided, in *Arthur* v. *Davies,* 96 U. S. 135, that suspenders or braces composed in part of India rubber were taxable by their name, and not by reference to any other articles of which they might be composed.

In *Faxon* v. *Russell,* in a very brief opinion, which is not reported, but a copy of which is contained in treasury circular No. 3,970, they applied the foregoing decision to the case of webbing. In those cases the contest was between "braces" or "webbing," and undesignated articles. In this case webbing is mentioned by name in the one clause, and webbings in the other, of section 2504, Rev. St., relied on by the parties respectively.

Rev. St. § 2504, Sched. M, p. 477, (2d Ed.,) re-enacts the act of 1842, or its successors, as follows: "India-rubber articles, composed of.—Braces, suspenders, webbing, or other fabrics, composed wholly or in part of India rubber, not otherwise provided for," to a duty of 35 per cent. This is the clause cited by the plaintiffs. Webbing is named in two other clauses of the same section, which are admitted to be inapplicable. These are as follows, (sched. H, p. 469:) "Silks

and silk goods. \* \* \* Silk vestings, pongees, shawls, scarfs, mantillas, pelerines, handkerchiefs, veils,laces, shirts, drawers, bonnets, \* \* \* webbing \* \* \* and ready-made clothing of silk, or of which silk is a component material of chief value," 60 per cent. If there were some silk in the plaintiffs' goods, they would not come under this enactment if there were any India rubber in them. Again, in sched. M, p. 482: "Webbing composed of cotton, flax, or other materials, not otherwise provided for." It is admitted that the goods were not assessable under this part of the section.

The assessment was made by virtue of Schedule L, p. 472, taken from the wool tariff act of 1867, as follows:

" Webbings, beltings, braids, galloons, fringes, gimps, cords, cords and tassels, dress trimmings, head-nets, buttons, or barred buttons, or buttons of other forms for tassels for ornaments, wrought by hand or braided by machinery, made of wool, worsted, or mohair, or of which wool, worsted, or mohair is a component material,—50 cents per pound, and, in addition thereto, 50 per centum *ad valorem*."

It is not easy to construe these clauses so as to make them consistent with each other. One argument is that this webbing is neither wrought by hand nor braided by machinery, but is woven in a loom. It is agreed that webbings, beltings, bindings, and galloons, are, and were, at the date of the act, always so woven. The other articles enumerated in that clause are sometimes wrought by hand or braided by machinery, wholly, or in part. Now, if these qualifying words, "wrought by hand or braided by machinery," qualify the whole clause, these webbings are not within it. Such would, undoubtedly, be the most natural and obvious construction of the sentence, just as it is admitted to be the true construction of the words which follow immediately, "made of wool, worsted, or mohair," etc.; but when we are informed that four of the fourteen articles are not made by either of the described methods, we are disposed to say, *ut res valeat*, that the qualifying words may be applied to the last antecedent, "buttons of other forms for tassels or ornaments." The collocation is the same in the law of 1867, (14 St. 561,) and the

facts and arguments do not inform me that there has been any decision, or any practice, since that act was passed, until this controversy arose, governing the classification of webbing which is composed partly of wool and partly of India rubber.

Again, it may be said that all the articles mentioned in this clause are articles of dress, or of trimming and ornament; and that, by the rule of *noscitur a sociis*, the webbings (it is webbing in the singular in the India-rubber clause) may be held to be certain particlar kinds of webbing, used for similar purposes.

A third argument is that elastic webbing has been classified with suspenders, etc., under the India rubber-clause, for nearly 40 years, and that it cannot be supposed that congress, in enacting the wool tariff of 1867, intended to change it. If, then, the clauses would, upon their face, appear repugnant, the wool clause should be construed to refer to webbing which contains wool, and does not contain India rubber, especially as the latter is a very specific and limited class, and as the goods in question derive their usefulness entirely from their elastic quality. The words in the elastic-webbing clause, "not otherwise provided for," seem to refer to other fabrics of India rubber, such as shoes and boots, which are mentioned two lines lower down, and pay a smaller duty. I gave too much weight to that qualification in *Faxon* v. *Russell*, and was corrected by the supreme court. Though the wool clause was historically later in its origin than the India-rubber clause, they stand together in the Revised Statutes, and form part of one contemporaneous enactment.

Steadiness in the rules and methods of taxation is very important. On the part of the United States the argument is very strongly urged that the wool tariff was intended to provide for every article known to commerce which is made in whole or in part of that material, and to repeal all other laws which assessed a duty on anything of that sort. I find it very difficult to reconcile these provisions of law, or to say which must be preferred. Upon the whole, in consideration

of the special character of this elastic webbing, which determines its use, and of its having been classified ever since 1842 in a small class of elastic goods, and so treated by the supreme court, I do not feel justified in changing the classification, and therefore hold that these goods were subject to a duty of 35 per cent.

In compliance with the stipulation of the parties, the case must be sent to an assessor to ascertain the damages, and it is so ordered.